UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **TRADAVION D. HUGHES** | **CIVIL ACTION NO. 23-0107** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE S. MAURICE HICKS, JR.** |
| **CHASE DAVIDSON, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Tradavion Hughes, a prisoner at Caddo Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately January 20, 2023, under 42 U.S.C. § 1983. He names Deputy Chase Davidson and Deputy April Davis as defendants.[1] For reasons that follow, the Court should retain Plaintiff's excessive force claims against Deputy Chase Davidson. The Court should dismiss Plaintiff's remaining claims against Deputy April Davis.

### Background

Plaintiff states that on December 20, 2022, Deputy April Davis was in an altercation which "had nothing to do with" him. [doc. # 8, p. 1]. Plaintiff wanted to inform a sergeant of what Davis "was trying to do." *Id.* Davis, however, refused Plaintiff's request to speak with a sergeant and instead "called a refusal[,]"[2] allegedly violating Plaintiff's First Amendment right to freedom of speech. *Id.*

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff suggests that "called a refusal" means that Davis was notifying others that Plaintiff was refusing to obey an order.

A "signal was called" on Plaintiff for no apparent reason; he cooperated, lying down on the ground until the emergency response team ("ERT") arrived. [doc. # 1, p. 4]. An ERT member handcuffed him and walked him to his cell. *Id.* Plaintiff claims that while in his cell, Deputy Davidson "pretended to take the handcuffs off while bending [Plaintiff's] wrist, knowing that [Plaintiff] would flinch due to the pain." *Id.* Plaintiff claims that Davidson "used this tactic to snatch [him] out of [his] cell and slam [his] face into the iron pole of the tier[,]" injuring Plaintiff's face and/or eye. *Id.* at 4-5. Plaintiff remained handcuffed. *Id.* at 5.

Plaintiff alleges that thereafter "they" almost broke his arm while forcing him down stairs. *Id.* After he pleaded, "please y'all are hurting my arm, please don't kill me[,]" Davidson allegedly kicked Plaintiff's legs and slammed Plaintiff's face to the concrete floor, almost breaking his neck. *Id.* Plaintiff was knocked unconscious, and his face was injured even more. *Id.* He was "pulled up[,]" but he was unable to stand; he was then carried out "as blood poured from [his] face." *Id.*

Plaintiff states that he complied with all commands, he was unarmed and never posed a threat, he could not defend himself, and he was never hostile or violent. [doc. # 8, p. 2].

Plaintiff claims that Deputy April Davis "caused the incident to happen to" him. [doc. # 6].

Plaintiff states that administrative policy was violated when no one "called" a "signal" after he suffered severe head trauma. *Id.*

Plaintiff seeks compensation for his pain and suffering. [doc. # 1, p. 6].

**Law and Analysis**

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a

prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

*Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional

conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Excessive Force**

The Court should retain Plaintiff's excessive force claims against Deputy Chase Davidson. However, to the extent Plaintiff claims that Deputy April Davis used excessive force, the Court should dismiss his claim.

At best, Plaintiff states that "they" almost broke his arm while forcing him down stairs. Plaintiff, however, does not explain who "they" are or were. The undersigned previously instructed Plaintiff to "provide a separate description of what, exactly, each defendant did to violate his rights." [doc. # 5, p. 2]. Plaintiff filed an amended pleading, naming Davis as a new defendant, but he does not claim that Davis participated in any use of force. Accordingly, Plaintiff's ostensible claim is implausible and conclusory. *See Carr v. City of Spring Valley Vill.*, 2022 WL 1553539, at *4 (5th Cir. May 17, 2022) ("There are four officers against whom the complaint makes no allegations regarding any use of force . . . . It is axiomatic that an officer who uses no force at all has not used force that is excessive to the needs of the situation.").

Plaintiff does allege that Deputy April Davis "caused the incident to happen to" him. [doc. # 6]. He does not specify which "incident" to which he refers, but construing his allegations in his favor he presumably refers to one of Deputy Davidson's uses of force. That said, Plaintiff does not plausibly allege that Davis directed, encouraged, or incited Davidson to use force (much less excessive force). Nor does he allege that Davis knew Davidson would use excessive force or that Davis was even present at the time the excessive force was applied. Rather, Plaintiff pleads only that one event preceded the other: Davis's action or inaction preceded Davidson's uses of force. *See Huss v. Gayden*, 571 F.3d 442, 459 (5th Cir. 2009) ("The *post hoc ergo propter hoc* fallacy assumes causality from temporal sequence. It literally

5

means 'after this, because of this' It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship.").

"A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008). Here, Plaintiff's allegation of causation is simply too attenuated to plausibly establish that Davis caused, or otherwise failed to protect him from, any uses of excessive force.[4]

### 3. First Amendment Freedom of Speech

Plaintiff first claims that Deputy April Davis violated his right to freedom of speech when she refused his request to speak to a sergeant and instead "called a refusal."[5] [doc. # 8, p. 1]. Plaintiff wanted to inform a sergeant of what Davis "was trying to do."

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). A prisoner "must do more than point to the existence of a generic First Amendment right. He must also establish that he exercised that right in a manner consistent with his status as a prisoner." *Id.* at 864. "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities . . . ." *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017).

In *Freeman*, the Fifth Circuit stated, "[W]here internal grievance procedures are

---

[4] Plaintiff does not present any allegations of conspiracy.

[5] To reiterate, Plaintiff suggests that "called a refusal" means that Davis notified others that Plaintiff refused to obey an order.

available," a prison has the authority "to circumscribe the manner in which a grievance or criticism right is exercised." *Freeman*, 369 F.3d at 864. The plaintiff there claimed that the defendants retaliated after he publicly criticized a prison chaplain, but the Fifth Circuit found that "[p]rison officials may legitimately punish inmates who verbally confront institutional authority without running afoul of the First Amendment." *Id.* The court concluded that the plaintiff's public rebuke was "inconsistent with his status as a prisoner and [was] not afforded First Amendment protection." *Id.*

In *Cardona v. Tuite*, 258 F. App'x 643, 644 (5th Cir. 2007), the court found, where a prisoner told an officer that an order was illegal, that the prisoner was not exercising a First Amendment right because he did not utilize the prison's internal grievance procedure to protest the order. Similarly, in *Hanna v. Maxwell*, 415 F. App'x 533, 536 (5th Cir. 2011), the court found that the prisoner did not exercise a First Amendment right because he did not complain about the conduct of corrections officers through proper channels and instead threatened to file a lawsuit during a confrontation with the officers. *See Lann v. Cockrell*, 173 F. App'x 319, 321 (5th Cir. 2006) ("Questioning a prison officer as to his authority to enforce prison regulations is therefore not a protected activity under the First Amendment.").

Here, without more, Plaintiff's allegation that Deputy Davis refused his request to speak to a sergeant about Davis's actions—i.e., a complaint pertaining to his status as a prisoner—and instead "called a refusal" does not reflect the exercise of a specific constitutional right. Plaintiff does not allege that Davis refused to allow him to use the correctional center's grievance procedure (or any other proper channel by which to raise a grievance) to protest or report Davis's

actions.[6] Rather, he alleges that Davis refused to allow him to speak with a sergeant.[7] His terse allegations suggest that the manner in which he presented—or attempted to present—his speech was inconsistent with his status as a prisoner; accordingly, his alleged speech is not afforded First Amendment protection. At best, Plaintiff essentially alleges only "a generic First Amendment right[,]" which as above is insufficient.

The Court should dismiss this claim against Deputy Davis.[8]

**4. Conclusory Claim**

Plaintiff suggests that he did not receive prompt emergency medical care after the uses of force described above. [doc. # 1, p. 5]. He alleges specifically: "A signal 51 was supposed to be called, which is for medical emergencies due to the severeness of my head trauma but this administrative policy was ignored and could have cost me my life. [sic]." *Id.* Plaintiff, however, does not seek relief for this allegation. Even if he did, he does not identify a responsible defendant. *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 421 (5th Cir. 2017) (dismissing a claim that supervisory officials failed to correctly house the plaintiff because

---

[6] Plaintiff states that there is a prison grievance procedure at his institution. [doc. # 1, p. 2]. In fact, he reportedly utilized the procedure to grieve a later incident. [doc. # 7].

[7] Plaintiff does not allege or suggest that requesting to complain, or complaining to, a sergeant was a "proper channel" for submitting a grievance.

[8] Even assuming Plaintiff stated a plausible claim, he does not seek any cognizable relief for this claim. He seeks only monetary compensation, but he does not allege that he suffered any physical injury (or any other injury compensable by monetary relief) because of the alleged First Amendment violation. *See* 42 U.S.C. § 1997e(e).

8

despite the magistrate judge's instruction to "state what each defendant did[,]" the plaintiff did not identify a responsible defendant).[9] The Court should dismiss this ostensible claim.[10]

**5. Procedural Due Process**

Plaintiff suggestively claims that Deputy April Davis filed false disciplinary charges against him, charging him with: "(1) threat to staff, (2) disobeying a verbal order, [and] (3) disorderly conduct." [doc. # 8, pp. 1, 3]. Plaintiff was "placed on (BMU) Behavioral Management Unit for 20 days . . . ." *Id.* at 3. However, he suggests that he was only in the "BMU" for two days because he was released from the BMU on probation and placed in his "prior housing unit." *Id.*

Ultimately, Plaintiff's punishment did not implicate a protected property or liberty interest; thus, he does not state a plausible claim. *See Carter v. Brown*, 772 F. App'x 67, 68 (5th Cir. 2019) (finding, where the plaintiff argued "that he was falsely charged and convicted at a hearing that violated established procedures, [and] relied on false evidence," that the plaintiff did not allege "a due process violation" because his punishment did not "implicate a protected liberty interest[.]"); *Lasater v. Herrera*, 729 F. App'x 362, 363 (5th Cir. 2018) (finding, where the plaintiff alleged that prison officials drafted a false disciplinary report and violated his due process rights by destroying the physical evidence, that the plaintiff's rights were not violated because his punishment was not atypical).

---

[9] *See Jones v. Hosemann*, 812 F. App'x 235, 238-39 (5th Cir. 2020) ("It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm.").

[10] The undersigned also observes that "the failure of prison administrators to follow prison rules and regulations does not, without more, give rise to a constitutional violation." *Moreno v. Bunton*, 193 F.3d 518 (5th Cir. 1999).

"'Inmates have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). "'[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (*quoting Pichardo v. Kinker*, 73 F.3d 612, 612 (5th Cir. 1996)); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("[A]dministrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest."). "In other words, segregated confinement is not grounds for a due process claim unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hernandez v. Velasquez*, 522 F.3d 556, 562-63 (5th Cir. 2008) (*quoting Sandin v. Conner*, 515 U.S. 472, 484 (1995)).[11]

Here, the Court must determine whether Plaintiff's segregated confinement constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life, such that a liberty interest in avoiding the deprivation arises." *Wilkerson*, 774 F.3d at 853 (internal quotation marks and quoted source omitted). "In deciding whether changes to an inmate's conditions of confinement implicate a cognizable liberty interest, both *Sandin* and [*Wilkinson*] considered the *nature* of the more-restrictive confinement and its *duration* in relation to prison norms and to the terms of the individual's sentence." *Id.* (emphasis added). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include the

---

[11] "Extraordinary circumstances" and "without more" are simply "alternative statements of the *Sandin* test: administrative segregation 'without more' or 'absent extraordinary circumstances' is administrative segregation that is merely incident to ordinary prison life, and is not an 'atypical and significant hardship' under *Sandin*." *Wilkerson v. Goodwin*, 774 F.3d 845, 853 (5th Cir. 2014).

10

extent to which the conditions of the disciplinary segregation differ from other routine prison conditions and the duration of the disciplinary segregation imposed compared to discretionary confinement." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (*cited with approval by Wilkerson*, 774 F.3d at 854). "In essence, courts employ a sliding scale, taking into account how bad the conditions are and how long they last." *Bailey v. Fisher*, 647 F. App'x 472, 476 (5th Cir. 2016). "On such a sliding scale, truly onerous conditions for a brief period of time may not be atypical; less onerous conditions for an extended period of time may be." *Id.*

With all of that said, however, the "Fifth Circuit recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, such that 18-19 months of segregation under even the most isolated of conditions may not implicate a liberty interest." *Id.* (citing *Wilkerson*, 774 F.3d at 855).

Here, Plaintiff was in the BMU for either two or twenty days. Even "under the most isolated of conditions," neither period of segregation was excessive in degree. *See Bailey*, 647 Fed. App'x at 476. As Plaintiff presents no extraordinary circumstances and alleges no atypical or significant hardships, he does not state a plausible procedural-due-process claim.[12]

---

[12] *See Bailey*, 647 Fed. App'x at 476 (finding that, if the prisoner was confined less than approximately nineteen months in segregation, he would not state a claim even considering that he was in lockdown 23-24 hours each day, that he lacked visitation, that he lacked contact with other prisoners, that he could not attend religious gatherings or educational/vocational programs, that he lacked entertainment and "canteen," that he could rarely use the telephone, and that he could only shower three times per week); *see also Palmer v. Cain*, 350 F. App'x 956, 957 (5th Cir. 2009) (finding that due process was not required because the appellant's 97 days in administrative segregation were not sufficiently atypical or significant); *Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding no claim where the prisoner "received 30 days' cell and commissary restriction (including loss of recreation and library privileges, as well as the ability to attend religious services), 90 days' loss of telephone privileges, 15 days of solitary confinement, a reduction from trustee class 4 to line class 1, and an increase of his custody level from minimum to medium."); *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (finding no claim where the prisoner was housed in a special tier for six months without visitation privileges).

Accordingly, the Court should dismiss this claim.

### Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Tradavion D. Hughes's claims against Deputy April Davis be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 17th day of February, 2023.

                                              Kayla Dye McClusky
                                              United States Magistrate Judge